**FEDERAL TRADE COMMISSION, Appellant,**

v.

**PPG INDUSTRIES, INC., et al.,**

**FEDERAL TRADE COMMISSION**

v.

**PPG INDUSTRIES, INC., et al., Appellants.**

Nos. 86–5206, 86–5269.

United States Court of Appeals, District of Columbia Circuit.

Argued June 9, 1986.

Decided Aug. 22, 1986.

---

Steven A. Newborn, Atty., F.T.C., with whom Marcy J.K. Tiffany, Acting Gen. Counsel, Ernest J. Isenstadt, Asst. Gen. Counsel and Jerold D. Cummins, Deputy Asst. Gen. Counsel, F.T.C., were on the brief for F.T.C., appellant in No. 86–5206 and cross-appellee in No. 86–5269, Washington, D.C.

John V. Lacci, Atty., F.T.C., Washington, D.C., also entered an appearance for F.T.C.

Bertram Kantor, New York City, of the Bar of the Supreme Court of the State of N.Y., Second Dept. Appellate Div., pro hac vice by special leave of Court and Carla A. Hills, Washington, D.C., with whom Michael H. Byowitz, New York City, Irwin Goldbloom and Peter L. Winik, Washington, D.C., were on the brief for PPG Industries, et al., appellees in No. 86–5206 and cross-appellants in No. 86–5269.

Before WALD, Chief Judge, BORK and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge BORK.

BORK, Circuit Judge:

This is an appeal by the Federal Trade Commission of the district court's order denying its request for a preliminary injunction barring the acquisition of Swedlow, Inc. by PPG Industries, Inc. The court instead entered a hold separate order pending completion of the Commission's final decision on the legality of the acquisition. *See FTC v. PPG Industries, Inc.*, 628 F.Supp. 881 (D.D.C.1986).[1] The Commission maintains that this court's decision in *FTC v. Weyerhaeuser Co.*, 665 F.2d 1072 (D.C.Cir.1981), compels entry of a preliminary injunction rather than a hold separate order when, as in the present case, the district court finds that the Commission has demonstrated a substantial likelihood of success on the merits. In their cross-appeal, PPG Industries, Inc. and Swedlow, Inc. also seek reversal of the district court's hold separate order but on the ground that the Commission, having demonstrated no likelihood of success on the merits, was entitled to no preliminary relief.

The underlying administrative proceeding is brought by the Commission to establish that the proposed acquisition would violate section 7 of the Clayton Act, 15 U.S.C. § 18 (1982), which bars a merger if its effect "may be substantially to lessen competition, or to tend to create a monopoly."[2] The Commission sought a preliminary injunction in the district court pursuant to section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b) (1982), which permits the issuance of such an injunction upon the court's determination, after "weighing the equities and considering

1. The district court initially entered a preliminary injunction "subject to a condition subsequent, namely, the entry of an appropriate hold separate order." *PPG Industries, Inc.*, 628 F.Supp. at 883. Following additional hearings the district court issued an order vacating the preliminary injunction and imposing a hold separate arrangement on appellees. The district court stayed the effect of its order, however, pending this court's consideration of the Commission's motion for injunction pending appeal. *See FTC v. PPG Industries, Inc.*, Civ.Action No. 86–0022 (Apr. 3, 1986). On May 7, 1986, this court granted the Commission's motion for injunction and appellees' motion for expedited consideration of the appeal.

2. The challenge is also based on § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 (1982), which, for present purposes, may be assumed to be merely repetitive of § 7 of the Clayton Act.

the Commission's likelihood of ultimate success," that such relief "would be in the public interest."

After an evidentiary hearing and briefing, the district court concluded that "[a]ssuming the traditional rules of antitrust analysis will continue to apply, the FTC and the Court of Appeals may almost surely be expected to find that the change in market structure following a PPG–Swedlow merger will be sufficiently inimical to competition to forbid the acquisition altogether." 628 F.Supp. at 885 (footnote omitted). Nevertheless, the court did not issue a preliminary injunction but, because it found equities favoring the acquisition, entered a "hold separate order" which allowed the acquisition to proceed but required that the companies be operated separately so that divestiture of Swedlow could be implemented if the Commission won its case.

We think the district court's conclusions regarding the merits of the Commission's challenge are supported by the record but that it gave too much weight to the equities urged by PPG and Swedlow. This conclusion requires us to reverse the district court's entry of a hold separate order and to remand the case with instructions to enter a preliminary injunction barring consummation of the merger pending completion of the proceedings before the Commission.

## I.

PPG Industries is a publicly-held manufacturer of glass products, automotive and industrial coatings, and chemicals. It is the world's largest producer of glass aircraft transparencies—windows, windshields, and canopies used in civilian and military fixed-wing aircraft and helicopters. It is also a substantial supplier of acrylic and composite (mixed glass/acrylic) transparencies. Swedlow is a closely-held corporation and the world's largest manufacturer of acrylic aircraft transparencies.

Swedlow does not produce glass transparencies. While PPG and Swedlow produce transparencies from different materials, the district court found the corporations to be "frequent competitors for contracts to supply transparencies to major U.S. airframe manufacturers." *FTC v. PPG Industries, Inc.*, 628 F.Supp. 881, 883 (D.D.C. 1986). The district court thus characterized the proposed merger as "ostensibly horizontal in effect." *Id.*

In assessing the Commission's likelihood of success on the Clayton Act challenge, the district court found the relevant product market to be

aircraft transparencies requiring, for want of a better term, "high technology" to produce, without regard to the materials of which they are fabricated. The recent history of the industry indicates that, on most aircraft, advanced glass and/or acrylic (or composite) transparencies are now—or will soon become—functionally interchangeable in the sense that each can substantially meet the design specifications established by the airframe manufacturers. Glass and acrylic undoubtedly still do have advantages and disadvantages *vis-a-vis* one another, but producers of glass transparencies and manufacturers of acrylic transparencies consistently bid against one another for contracts to fill the same apertures, and the trend in their respective technological evolutions is clearly in the direction of an eventual coalescence.

628 F.Supp. at 884 (footnotes omitted). The relevant geographic market was found to be the United States market for such aircraft transparencies. *Id.* Because it had no accurate figures for the emerging high technology market, the court used the closest relevant market, that for all transparencies, and noted that this market is already highly concentrated with the top four firms accounting for over 80% of all sales in 1984, a statistic which yields a 1943 on the Herfindahl-Hirschmann Index ("HHI"). *Id.*[3] The merger of PPG, the

3. Appellees complain of this use of the United States all-transparency market rather than the

high-tech market, and contend that the market share numbers are statistically and analytically

largest manufacturer with a 30% market share, and Swedlow, the second largest manufacturer with a 23% market share, would create an entity with a combined market share two-and-one-half times larger than that of the nearest competitor and raise the HHI to 3295.

Market power or the lack of it is often measured by the HHI. The FTC and the Department of Justice, as well as most economists, consider the measure superior to such cruder measures as the four- or eight-firm concentration ratios which merely sum up the market shares of the largest four or eight firms. The HHI, by contrast, is calculated by squaring the individual market shares of all firms in the market and adding up the squares. This method, unlike the four-and eight-firm concentration ratios, shows higher market power as the disparity in size between firms increases and as the number of firms outside the first four or eight decreases. The *Department of Justice Merger Guidelines* define as "unconcentrated" a market with an HHI below 1000, as "moderately concentrated" a market with an HHI between 1000 and 1800, and as "highly concentrated" a market with an HHI over 1800.[4] The pre-acquisition HHI calculated by the district court shows that the relevant market, as the court defined it, is already "highly concentrated" and the effect of the acquisition would be a dramatic increase in concentration. Both measures bring the PPG–Swedlow merger well within the range where, absent really extraordinary circumstances, the Department and the Commission will proceed against an acquisition under section 7 of the Clayton Act on the theory that the increased concentration raises a likelihood of "interdependent anticompetitive conduct." *See, e.g., United States v. General Dynamics Corp.*, 415 U.S. 486, 497, 94 S.Ct. 1186, 1193–94, 39 L.Ed.2d 530 (1974); *United States v. Phillipsburg National Bank & Trust Co.*, 399 U.S. 350, 365–67, 90 S.Ct. 2035, 2044–45, 26 L.Ed.2d 658 (1970);

*United States v. Philadelphia National Bank*, 374 U.S. 321, 362–66, 83 S.Ct. 1715, 1740–43, 10 L.Ed.2d 915 (1963). This conclusion rests upon the theory that, where rivals are few, firms will be able to coordinate their behavior, either by overt collusion or implicit understanding, in order to restrict output and achieve profits above competitive levels. The district court also found high market-entry barriers that would prolong high market concentration. There is no doubt that the pre- and post-acquisition HHI's and market shares found in this case entitle the Commission to some preliminary relief. The dispute concerns two issues. The first is whether the district court defined the relevant market correctly. If not, the HHI's computed are meaningless and do not reflect market reality. The second issue, if the HHI's are accurate, is whether the Commission was entitled to a preliminary injunction rather than a hold separate order.

The district court, having found a virtual certainty that the acquisition will eventually be held unlawful, and hence that some interim relief was in order, next analyzed whether entry of a hold separate order in lieu of a preliminary injunction would be appropriate. Relying on this court's decision in *FTC v. Weyerhaeuser Co.*, 665 F.2d 1072 (D.C.Cir.1981), the district court concluded that a stringent hold separate order would prevent interim competitive harm and permit adequate ultimate relief, while accounting for the strong private and public equities that it thought favored consummation of the merger. *FTC v. PPG Industries, Inc.*, 628 F.Supp. at 886. The private equities cited included the failing health of David Swedlow, the founder and "entreprenurial muse" of Swedlow who is without an heir to succeed him and wishes to sell the business "as a going concern to another with both motive to continue it in its present form and resources sufficient to perpetuate its stature in the industry." *Id.*

---

flawed. As will be seen, however, HHI's of the same order of significance exist under any plausible market definition.

4. We note that the Department of Justice Guidelines offer a useful illustration of the application of the HHI, but are by no means to be considered binding on the court.

There is no claim, however, that Mr. Swedlow is currently indispensable to the continued success of the company he founded. Also cited was Mr. Swedlow's desire to receive, and have his loyal investors receive, full and fair value for Swedlow stock. *Id.* Noting that the PPG offer was the best received by Swedlow, and that it could not be predicted whether another acceptable offer would be made by one of the few market participants, the district court concluded that "Swedlow's post-David Swedlow future without a merger with PPG is conjectural even if auspicious." *Id.*

The court listed three public benefits to be gained from a hold separate arrangement. PPG's financial resources would enable Swedlow, currently capital-short, to preserve its leading position in acrylic technology. 628 F.Supp. at 886–87. Second, Swedlow, a significant supplier of transparencies to the U.S. military, would not be faced with a takeover by a foreign corporation. *Id.* at 887. Finally, "an amalgam (appropriately circumscribed so as to prevent the 'leakage' of knowledge the Commission fears)" of PPG's and Swedlow's technologies could lead to new, more sophisticated transparencies. *Id.* The court discounted the Commission's concern that no incentive would exist for competition between PPG and Swedlow under a hold separate order. Rather, the court found the considerable uncertainty surrounding approval of the merger an adequate "inducement to both PPG and Swedlow to keep the latter as viable and attractive to potential third-party purchasers as possible." *Id.*

## II.

■ The district court, as we have noted, defined the relevant product market as "one of aircraft transparencies requiring, for want of a better term, 'high technology' to produce, without regard to the materials of which they are fabricated." 628 F.Supp. at 884. This definition is based on both buyers' and sellers' perceptions of the relevant market and focuses on the inter-material competition present at the request-for-proposal stage of transparency development. The record supports the district court's finding that PPG and Swedlow perceive themselves to be competitors in the evolving high technology market, as do the aircraft manufacturers who request proposals for, and eventually purchase, the transparencies.

PPG and Swedlow maintain that they do not compete, because their businesses are largely complementary. Swedlow, they assert, does not make, and cannot make, glass transparencies for aircraft, while, with respect to plastic transparencies, PPG and Swedlow have different capabilities and different products. Relying on *United States v. General Dynamics Corp.*, 415 U.S. 486, 94 S.Ct. 1186, 39 L.Ed.2d 530 (1974), the companies argue that, because of rapid and continuing technological changes in the industry, statistics reflecting past market shares do not accurately indicate future market shares. No doubt that is often true. To the degree that it is, an antitrust court must, of necessity, attempt to predict the future market and the merging firm's share of that market. That is just what the district court did and we certainly cannot say that its finding was clearly erroneous.

The propriety of a "high technology" product market definition is buttressed by the testimony of PPG officials who acknowledged that neither glass nor acrylic technology alone will be able to meet the transparency demands of the near future.[5] The high technology transparency market is highly concentrated. This fact and the fact that PPG and Swedlow are competitors are illustrated by the evidence concerning the proposed V–22 tilt rotor aircraft. The V–22 is a $15 billion program

---

5. *See, e.g.,* Deposition of J.C. Haney of PPG, Joint Appendix ("J.A.") at 924 ("the real future of military type aircraft is going to involve the composite...."); Deposition of Thomas Yelle of PPG, J.A. at 948B ("the window of the future is a glass/plastic"). *See also* PPG Aircraft Products 1984 Long Range Plan, J.A. at 1357 ("High growth is expected in the Glass-Plastic segment [because] a glass-plastic aircraft transparency offers the best of both worlds....").

that will ultimately produce more than 2000 helicopters. The first 913 have already been ordered by the military and the cost of the transparencies on this initial order alone is $145 million. The airframe manufacturer, a joint venture of Boeing-Vertol and Bell Helicopter, invited four transparency manufacturers, deemed the only ones capable of meeting the specifications, to compete. These were PPG, Swedlow, Sierracin Corp., and Goodyear Aerospace Corp.[6] Goodyear withdrew from the competition, apparently because it lacked sufficient technology to compete.[7] This episode tends to bear out the accuracy of PPG's and Swedlow's perception, as found by the district court, that only Sierracin has technological capabilities comparable to theirs. 628 F.Supp. at 885. It may be, therefore, that there are only three strong competitors in the high technology market. The proposed acquisition would leave two.

There is other evidence both that there is a high technology product market and that PPG and Swedlow, far from being complementary businesses, compete head on. The military has three other major new projects: LHX (Light Helicopter), expected to be a larger project than the V–22; ATF (Advanced Tactical Fighter); and ATB (Advanced Technology Bomber). Both PPG and Swedlow intend to bid on each of these. Indeed, the evidence that PPG and Swedlow are competitors is overwhelming. It is recognized as a fact in the internal documents of the two companies and in the testimony of their customers. *See, e.g.,* Joint Appendix ("J.A.") at 173–74, 189, 206, 514, 747S, 1413A. Competition between them exists not only in bidding but at the proposal stage when airframe designers receive proposals from manufacturers offering different materials and at the stage of research and development as transparency manufacturers try to influence airframe customers about types of transparencies

for future generations of aircraft. For many specifications, moreover, different materials may be used. *See, e.g.,* J.A. at 1309. The point that the two companies are in direct competition does not merit further discussion.

The district court was, of course, unable to calculate an HHI for the high technology market since that market is growing rapidly, major portions of it lie in the immediate future, and market shares depend upon both the success of the future bids of the transparency manufacturers and the ultimate size of the projects for which they bid. But the fact that there appear to be only three fully capable firms in that market indicates that the HHI will be very high. Even if one or two other firms were thought capable of expanding or entering, the HHI would still put the market in the highly concentrated range, and the acquisition would cause a great increase in the HHI.

Given the difficulty of calculating an HHI for the high technology market, the district court used the "closest available approximation," the "current United States all-transparency market." 628 F.Supp. at 884. PPG and Swedlow can hardly complain about that proxy, for the all-transparency market is obviously less concentrated than the high technology transparency market; yet the high concentration figures found come from the less concentrated market. As we have said, PPG and Swedlow never attempted to define a relevant market but contented themselves with challenging the Commission's showing. Perhaps for that reason, the Commission has provided us with information from the record for every market the evidence suggests as remotely plausible.

PPG and Swedlow each possesses capabilities in the acrylic, polycarbonate, and composite areas, and, while perhaps not as vigorous as that present in the high tech-

---

6. *See, e.g.,* Testimony of R.C. Moyer, Senior Vice President of Marketing, Swedlow, Inc., J.A. at 130–32; Konecny Affidavit, J.A. at 182.

7. Konecny Affidavit, J.A. at 182. The record also reveals that Texstar, cited by PPG and

Swedlow as a potential high technology competitor, has met with considerable technological difficulties in its first major military project. Testimony of R.C. Moyer, J.A. at 1331–32.

nology market, the record reveals numerous examples of competition between PPG and Swedlow in the markets for all aircraft transparencies, all acrylic transparencies, stretched acrylic transparencies, all composite transparencies, glass-plastic transparencies and acrylic/polycarbonate transparencies. The Commission's unrebutted calculations estimate pre-merger HHI's for these markets ranging from 1943 to 4799, post-merger HHI's ranging from 3184 to 5213, and HHI increases ranging from 175 to 1795. *See* Reply Brief of Cross-Appellee Federal Trade Commission at 31.

PPG and Swedlow do not even attempt to respond to the Commission's demonstration that any of these six alternative market definitions yields results of similar magnitudes in market concentration.[8] On this aspect of the case, the Commission's showing is overwhelming. Unless PPG and Swedlow have evidence to present at the full administrative proceeding that they did not produce at the hearing in the district court, the odds are similarly high that PPG's proposed acquisition of Swedlow will ultimately be held to violate section 7 of the Clayton Act. We turn next to the preliminary relief to which the Commission is entitled.

### III.

In *FTC v. Weyerhaeuser Co.*, 665 F.2d 1072 (D.C.Cir.1981), a divided panel of this court concluded that section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b) (1982),[9] allowed a district court to issue a hold separate order in lieu of a preliminary injunction if "three countervailing features mark the particular case." 665 F.2d at 1085. The three features are: "significant equities favor the transaction *and* the less drastic restraint of a hold separate order realistically can be expected (a) to safeguard adequate eventual relief if the merger is ultimately found unlawful, and (b) to check interim anticompetitive harm." *Id.* (emphasis in original). Both public and private equities are to be considered, although private equities alone are insufficient to justify entry of a hold separate order. *Id.* at 1083. The court also enumerated several considerations that would "weigh against provisional relief less potent than a merger-blocking preliminary injunction." *Id.* at 1085–87.

 The district court in this case fashioned a very stringent order to keep the companies separate and competitive while preserving the perceived public and private benefits that flowed from the merger.[10] But, having found that the acquisition was almost certainly illegal, the district court faced a difficult task in justifying anything less than a full stop injunction. *Weyerhaeuser* is the law of this circuit and we must follow its rationale and apply the presumptions it establishes. The district

---

**8.** PPG and Swedlow challenge the geographic market definition, alleging that "the free world" is the appropriate market. The Commission maintains that this geographic market does not alter the ramifications of the merger. We find insufficient evidence to reverse the district court's definition.

**9.** As previously noted, § 13(b) conditions issuance of a preliminary injunction "[u]pon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest."

**10.** The order provided, *inter alia*, for the continued separate and competitive existence of each company by allowing PPG to acquire only bare beneficial ownership of the voting securities of Swedlow. The right to exercise voting power was vested in a trustee, a former Commission official who was nominated by the Commission.

Under the order PPG could neither exercise nor attempt to exercise any control or influence over Swedlow's business and Swedlow was to be operated by an independent Board of Directors appointed with the trustee's and the court's approval. No asset transfer or joint activity could occur without leave of court and the Commission could obtain, upon request, information and documents from the companies including finance statements and spending reports. The Swedlow trustee and Board were directed to use their best efforts to maintain the value of Swedlow's assets and to not distribute dividends to any party without prior court approval. The court retained jurisdiction to enforce or modify the order or to punish for violations. *See* FTC v. PPG Industries, Inc., Civ.Action No. 86-0022 (D.D.C. Apr. 3, 1986) (Hold Separate Order), J.A. at 15–45.

court did not sufficiently recognize that *Weyerhaeuser* kept intact the presumption in favor of a preliminary injunction when the Commission establishes a strong likelihood of success on the merits.

In examining the private equities, the district court found relevant the failing health of the founder and "entreprenurial muse," David Swedlow, and his wish to sell the company as a going concern for the best price available. The court noted that while other offers had been made to Swedlow, "none has mentioned terms as favorable as those offered by PPG, and other conditions, including financing, are imprecise." *PPG Industries*, 628 F.Supp. at 886. The court concluded that, although "Swedlow could remain, for a time, an attractive acquisition" and without its founder and without this merger is likely to have an "auspicious" future, "[t]here is no assurance given by the evidence that, should the PPG–Swedlow merger fail, any firm ... will definitely make an acceptable firm offer for Swedlow." *Id.*

The *Weyerhaeuser* court, however, emphasized that it did "not rank as a private equity meriting weight a mere expectation of private gain from a transaction the FTC has shown is likely to violate the antitrust laws." 665 F.2d at 1083 n. 26. In *Weyerhaeuser*, the district court gave weight to the ability of the shareholders of the acquired company to trade their illiquid shares for highly liquid Weyerhaeuser stock. *Id.* at 1088. This court affirmed the weight accorded this equity, finding that more than private financial gain was at stake. Specifically, "[t]he exchange would relieve pressure on the [acquired] company to redeem shares of stockholders seeking to meet death taxes or other obligations." *Id.*[11]

Unlike the corporation in *Weyerhaeuser*, Swedlow is a publicly-held company. Nor is any aspect of Swedlow's operations in

serious financial trouble. While aircraft-transparency market participants are limited in number, the record reveals several firms, both inside and outside the market, with varying degrees of interest in acquiring Swedlow.[12] The district court's conclusion that PPG is the only firm willing to pay Swedlow's price may be questionable; under *Weyerhaeuser* it is, in any event, irrelevant.

The district court's analysis of the public equities involved is also insufficient to justify hold separate relief. The court first cited the ability of Swedlow to obtain needed capital. This conclusion is of questionable validity for three reasons. First, regardless of the outcome of the attempted merger, Swedlow has been approved for additional financing which, in the words of its own chief financial officer, will be sufficient to support Swedlow at least through June of 1987. J.A. at 1123. Second, Swedlow will be eligible for a further increase, if standard financial prerequisites are met, that will meet its credit needs through a three-year litigation period. J.A. at 1124. While a hold separate order may enhance the prospect for increased credit, Swedlow may qualify without the merger, and the merger in no way guarantees credit approval. J.A. at 1129–30. Finally, it seems obvious that the alternative purchasers of Swedlow could similarly enhance the ability of the company to obtain capital. These considerations do not mean that the financial benefits of being acquired by PPG are non-existent but that they are not so necessary to Swedlow's continuing competitive vitality that they deserve much weight.

The district court next found that a public benefit is derived from keeping Swedlow out of foreign corporate hands. This perceived public benefit is insufficient to justify entry of a hold separate order. While some public benefit may be derived from

---

11. The *Weyerhaeuser* court also noted that "the district court could properly consider [the company's] interest in disposing at once of all its West Coast ... facilities so that it could concentrate on expanding and improving its Midwest production." *Id.* (footnote omitted).

12. The record reveals that earlier negotiations with Triplex, Inc. and another corporation were cut off pursuant to a PPG/Swedlow agreement.

avoiding foreign ownership of military suppliers,[13] it is not clear that absent a PPG merger foreign ownership is imminent or inevitable. Apparently, the only foreign firm to have seriously pursued acquisition of Swedlow is Triplex, a British firm. J.A. at 148. The record also reveals the existence of domestic firms interested in acquiring Swedlow. *See* J.A. at 218–23. Moreover, if PPG were to acquire Swedlow only to be required ultimately to sell it, as seems the highly probable outcome, the same problem, if it is a problem, of a foreign acquisition would present itself. A hold separate order seems likely to delay rather than avoid the issue. The prevention of an acquisition by a foreign firm does not weigh heavily in favor of a hold separate order.

Finally, the district court found that a merger of PPG and Swedlow might lead to the development of more sophisticated materials and/or transparencies. Yet, the hold separate order explicitly bars the exchange of technology absent court approval. If no exchange or only limited cooperation occurs, it is difficult to understand how the advances would be achieved. Even assuming that advances could be made, the danger of harm to competition outweighs any technological benefit. Obviously, if the court were to allow, intentionally or otherwise, a transfer of proprietary information, the very purpose of the order would be undermined. Furthermore, the gains to be derived from technological cooperation are not exclusive to a PPG–Swedlow marriage; cooperation with other market participants could yield similar results without causing the same market concentration.

The primary error in the district court's reasoning as to the availability of adequate ultimate relief involves its conclusion that the very strength of the Commission's showing on the likelihood of success on the merits would induce "both PPG and Swedlow to keep the latter as viable and attractive to potential third-party purchasers as possible." 628 F.Supp. at 887. There may be some realism in the court's assessment of the parties' incentives but it appears perverse from an antitrust perspective. According to this logic, the stronger the showing of an antitrust violation, the less the relief to which the Commission is entitled. The statute itself indicates that likelihood of success weighs in favor of an injunction, and this court has clearly stated that "a likelihood of success finding weighs heavily in favor of a preliminary injunction blocking the acquisition." *Weyerhaeuser*, 665 F.2d at 1085.

The reasoning of *Weyerhaeuser* also suggests that, under the circumstances of this case, even a severe hold separate order could not certainly protect against interim competitive harm or ensure the adequacy of eventual relief. The highly competitive nature of the aircraft transparency market and the heavy utilization of advanced forms of technology make reliance on a hold separate order problematical. Unlike the situation in *Weyerhaeuser*, where no potential for transfer of trade secrets was involved, the PPG/Swedlow merger presents a substantial risk of transfer of trade secrets and other confidential information. "A hold separate order that cordons the acquired assets, even if it preserves the possibility of divestiture, may risk transfer of confidential information from the acquired, 'held separate' company to the acquiring company. If that transfer occurs, ultimate divestiture will not fully restore competition...." 665 F.2d at 1085–86 (footnotes omitted). Thus, if an employee of PPG or Swedlow, whether deliberately or inadvertently, violated the district court's no transfer rule, or if the district court mistakenly approved an apparently innocent transfer, substantial irreparable harm might result.

The *Weyerhaeuser* court also stated that under a hold separate order, "competition

---

13. It should be noted that Triplex apparently already supplies the U.S. military with aircraft transparencies, *see* J.A. at 268, and that the Commission maintains that the U.S. military encourages utilization of foreign suppliers. Appellant's Motion for Injunction Pending Apeal at 32, FTC v. PPG Industries, Inc., No. 86–5206 (D.C.Cir. filed Apr. 11, 1986).

between the enterprises will not retain the vigor it had prior to the merger." 665 F.2d at 1086 (footnote omitted). The court concluded that hold separate orders would not be appropriate "where the competitiveness of firms in a particular industry turns, in large part, on aggressive or innovative management initiatives." *Id.* The record indicates that success in the aircraft transparency industry depends almost entirely upon innovation in development of new materials and on aggressive management.

The judgment of the district court is affirmed in part, reversed in part, and remanded with instructions to enter a preliminary injunction against the acquisition of Swedlow by PPG.